UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARIN J. FRANKLIN,<br><br>  Plaintiff,<br><br>  v.<br><br>TANIA ARGUELLO, et. al.,<br><br>  Defendants. | Case No. 3:15-cv-00196-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Partial Motion to Dismiss. (Electronic Case Filing (ECF) No. 33.) Plaintiff filed a response (ECF No. 50), and Defendants filed a reply (ECF No. 52).[1] After a thorough review, it is recommended that Defendants' motion be denied.

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 22.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC) and Ely State Prison (ESP). (*Id*.) Defendants are Eugene Murguia, Dr. Michael Koehn, and Renee Baker. (ECF No. 21.)

After screening the original and amended complaints, District Judge Jones determined that Plaintiff may proceed with the following claims, now set forth in the amended complaint: due process claims against Murguia in Counts I and II (identified as counts II and III in the

---

[1] Plaintiff has filed a motion for Rule 11 sanctions pertaining to Defendants' partial motion to dismiss (ECF No. 49), as well as a motion to strike Defendants' reply brief as untimely (ECF No. 52). The court has concurrently issued an order denying the motion to strike Defendants' reply brief. In addition, the court is holding a hearing on the sanctions motion.

original complaint); Eighth Amendment deliberate indifference claims against Dr. Koehn in Count III (identified as Count IV in the original complaint); and, First Amendment free exercise claims against Baker in Counts IV and V (identified as Counts VI and VII in the original complaint). (*See* ECF Nos. 9, 12, 21.) The court will now provide a summary of the allegations in these counts, detailing Plaintiff's averments insofar as they were allowed to proceed by District Judge Jones.

With respect to Counts I and II, by way of background, Plaintiff alleges that on March 26, 2013, he was charged with various disciplinary violations. (ECF No. 22 at 8.) At disciplinary hearings conducted on April 5 and 17, 2013, he was advised that a guilty finding would likely subject him to long-term placement in disciplinary segregation and other sanctions. (*Id*. at 8-9.) He claims he was denied the procedural due process protections he is entitled because the hearing officer refused to allow Plaintiff to call any witnesses. (*Id*. at 9.) He was found guilty of various charges and sentenced to disciplinary segregation and referred for forfeiture of statutory good time credits. (*Id*.) Additionally he was required to pay restitution, which was subsequently deducted from his account. (*Id*. at 10.) He was transferred to ESP, a maximum security prison on April 23, 2013, to serve consecutive sentences totaling twenty months. (*Id*.) He ultimately spent thirty-two months in disciplinary segregation at ESP, followed by fifty-four days in administrative segregation at NNCC. (*Id*.) He claims that the conditions in disciplinary segregation at ESP amounted to an atypical and significant hardship in relation to the ordinary incidents of prison life. (*Id*.) This included the deprivation of his property to the tune of $539. (*Id*.)

In Count I, Plaintiff alleges that on March 26, 2013, he was issued a notice of charges for fighting, failure to follow rules and regulations and giving false information. (*Id*. at 13.) A disciplinary hearing was conducted by Murguia on April 5, 2013 at NNCC. (*Id*.) Plaintiff sought to call witnesses, including the unidentified charging employee and the other individual involved in the fight, but Murguia said that Plaintiff would not be permitted to call the "victim" as a witness, which Plaintiff claims indicates Murguia's bias. (*Id*. at 13-14.) Murguia prohibited other witnesses, stating they would be "redundant." (*Id*. at 14.) He avers that the charging employee's

report said that "staff" observed the incident, without identifying who witnessed the fight. (*Id*.) Plaintiff was found guilty, and the report was the only evidence used to convict him. (*Id*. at 15.) He was sentenced to sixty days in disciplinary segregation. (*Id*.)

In Count II, Plaintiff alleges that on March 26, 2013, he was also issued charges for assault, battery, possession of contraband, and giving false information. (*Id*. at 21.) Murguia conducted a disciplinary hearing at NNCC on April 17, 2013. (*Id*.) Again, Murguia would not allow Plaintiff to call witnesses, including the charging employee, because the testimony would be "redundant." (*Id*.) Murguia identified the charging employee as Plaintiff's victim, which Plaintiff claims shows Murguia's bias. (*Id*. at 22.) Murguia also refused to allow Plaintiff to introduce written evidence into the record. (*Id*.) Plaintiff was found guilty based only on the written information presented in the charging employee's notice of charges. (*Id*.) He was sentenced to eighteen months in disciplinary segregation. (*Id*.)

Plaintiff avers that in connection with these disciplinary convictions, he was required to pay restitution, which was subsequently deducted from his inmate account. (*Id*. at 10.) He was transferred to ESP, a maximum security prison on April 23, 2013, to serve consecutive sentences totaling twenty months. (*Id*.) He ultimately spent thirty-two months in disciplinary segregation at ESP, followed by fifty-four days in administrative segregation at NNCC. (*Id*.) He claims that the conditions in disciplinary segregation at ESP amounted to an atypical and significant hardship in relation to the ordinary incidents of prison life. (*Id*.)

In Count III, Plaintiff alleges that he arrived into NDOC custody with, *inter alia*, Gastroesophageal Reflux Disease (GERD) which was controlled on a high dose of "PPI" medication. (*Id*. at 26.) He used this medication or "H2" continuously from the time of his initial incarceration in 2004 until mid-2012, when Dr. Mar advised him of potential harmful side effects associated with long-term use of PPI or H2. (*Id*.) At that time, Plaintiff elected to discontinue these medications and try to use only a high dose of calcium antacid to treat his GERD symptoms. (*Id*. at 27.) He was prescribed 150 500mg antacid tablets per month for this purpose. (*Id*.) On April 23, 2013, he was transferred to ESP. (*Id*.) In September 2013, Dr. Koehn reduced Plaintiff's calcium antacid prescription by half, and Plaintiff's GERD symptoms

returned in frequency and intensity. (*Id*. at 30-31.) He discussed his symptoms with Dr. Koehn on February 10, 2014, and requested his prior medications, but Dr. Koehn refused. (*Id*. at 31.) His pain was so bad that at one point he feared he was having a heart attack, and suffered other physical and mental health issues. (*Id*. at 34.) Despite advising Dr. Koehn of this, Dr. Koehn continued to refuse Plaintiff's request to be placed on his former medication. (*Id*. at 36.) In June 2014, Dr. Koehn abruptly cancelled the calcium antacid prescription. (*Id*.) He sent multiple requests and grievances about his GERD symptoms, to no avail. (*Id*. at 37-38.) In late September 2014, Dr. Koehn restored Plaintiff's H2 prescription, and his pain subsided within forty-eight hours. (*Id*. at 38.)

He further alleges that once he arrived at ESP, he ate all of the food provided, but lost thirty pounds over a period of nine weeks. (*Id*. at 27-28.) He suffered hunger pangs which disrupted his sleep, as well as malaise and lethargy which precluded him from engaging in moderate exercise or other activities. (*Id*. at 28.) He asked to see the doctor in May 2013 to discuss his rapid weight loss, and saw Dr. Koehn on May 29, 2013. (*Id*.) He requested extra portions, but Dr. Koehn refused his request. (*Id*. at 28-29.) Between May 29, 2013 and October 16, 2013, he purchased more than $800 worth of items at the canteen and exchanged them for food from inmates. (*Id*. at 29.) Dr. Koehn refused Plaintiff's request for additional portions again on July 3, 2013. (*Id*. at 30.) He gained access to purchase food from the canteen again on October 16, 2013, and was then able to maintain a healthy weight. (*Id*.)

In Count IV, Plaintiff alleges that when he was transferred to ESP in April 2013 to serve his disciplinary segregation sanction through December 23, 2015, he was not allowed access to any "corporate" (group) Christian worship services which is part of his religious practice. (*Id*. at 40.) He claims he was precluded from attending any worship services for thirty-two months. (*Id*.)

In Count V, Plaintiff alleges that while he was at ESP to serve his disciplinary segregation sanction he was precluded from participating in the religious sacrament of Holy Communion. (*Id*. at 43-44.)

Defendants have filed a Partial Motion to Dismiss Counts I, II and III of the amended complaint, which is accompanied by several exhibits. (ECF Nos. 33, 33-1 to 33-5.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something

more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

///

///

///

///

///

As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the court will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

**B. Motion for Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. See Anderson, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
>
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Counts I & II**

Defendants argue that the court lacks subject matter jurisdiction over these claims because Plaintiff had redress by way of a small claims suit in the state justice court with respect to his alleged lost property. (ECF No. 33 at 5.) Defendants state that the only restitution amount deducted from Plaintiff's account was for Altercation 2013WSCC000155 in the amount of $50 and not $539 alleged. They mention that the majority of the property deprivation (presumably the rest of the amount he alleges was deducted) were property items he was unable to transfer from one housing location to another.

///

First, Defendants move to dismiss Counts I and II on the basis that the court lacks subject matter jurisdiction because Plaintiff could have sued to recover the $50 (and not $539) in the justice court. (ECF No. 33 at 5, citing *Parratt v. Taylor,* 451 U.S. 527, 538, 39 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31).

Preliminarily, they rely on matters outside of the four corners of the amended complaint, *i.e.*, Plaintiff's trust account statement, in making their argument. (*See* ECF No. 33 at 5:19-21; Ex. A, ECF No. 33-1.) As indicated above, the court may not consider materials beyond the face of the complaint without converting the motion into one for summary judgment. Defendants rely on the trust account statement to show that only $50 and not $539 was deducted from his account for restitution. The *amount* deducted is not essential to determining Defendants' argument concerning subject matter jurisdiction. Therefore, it is not necessary to convert the motion to one for summary judgment.[2]

Defendants' reliance on *Parratt v. Taylor* is misplaced. *See Paratt v. Taylor*, 451 U.S. 527, 538, 539 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330 (1986) (overruling *Parratt* to the extent it held that "mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment."). In *Parratt*, the inmate alleged that prison officials violated his due process rights when he had ordered certain hobby materials which the prison could not locate after the inmate was released from segregation. *Parratt*, 451 U.S. at 530.

The Fourteenth Amendment precludes states from depriving any person of "life, liberty or property, without due process of law[.]" U.S. Const. amend XIV. *Parratt* concerned "what process is due a person when an employee of a State *negligently* takes his property." *Id*. at 537 (emphasis added). As Defendants point out, the Supreme Court recognized that "postdeprivation remedies made available by the State can satisfy the Due Process Clause" and, "[i]n such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the State provides

---

[2] To the extent Defendants imply that the rest of the amount Plaintiff references must allude to property he was unable to take from one prison facility to another, this is not alleged in the complaint and there is no evidence regarding such property or prison policies on that subject. Therefore, the court will not consider that argument now.

a postdeprivation remedy." *Id*. at 538. The Court explained:

> These cases recognize that either the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.

*Id*. at 539. The Court concluded that tortious taking of an inmate's property as the result of a "*random and unauthorized act* by a state employee" justified the taking of property without predeprivation process. *Id*. at 541 (emphasis added).  This was because "the loss is not a result of some established procedure and the State cannot predict precisely when the loss will occur." *Id*. This type of loss "in almost all cases [is] beyond the control of the State" and, "in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." Id. This assumes "the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities." Id.

In *Parratt*, the Supreme Court determined that the inmate plaintiff had not alleged a violation of the Due Process Clause. *Id*. at 543. While he was deprived of property under color of state law, "the deprivation did not occur as a result of some established state procedure" but, "as a result of the unauthorized failure of agents of the State to follow established state procedure." *Id*. at 543. The Court concluded that the State of Nebraska provided an adequate post-deprivation remedy through its tort claims procedure. *Id*.; *see also Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984) (extending *Parratt* to intentional, unauthorized deprivations of property where post-deprivation remedies are available).

If, on the other hand, a prisoner challenges conduct taken pursuant to an established or authorized state procedure, rule or regulation, post-deprivation remedies "do not satisfy due process[.]" *Hudson v. Palmer*, 468 U.S. 517, 532, 534 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)). To be clear, a post-deprivation state remedy does not satisfy due process "where the property deprivation is effected pursuant to an established state procedure." *Id*. at 534.

///

The circumstances of *Parratt*, which involved an alleged negligent and *unauthorized* taking of property by a prison official are entirely different from those presented here, which District Judge Jones already described as alleging an *authorized* taking of property pursuant to established state procedure. Plaintiff pointed this out to Defendants, yet they failed to address it in their reply brief, and refused to acknowledge the difference between an allegation of an *unauthorized* taking of property and an *authorized* taking of property. Therefore, insofar as Defendants argue that Plaintiff fails to state a claim because he had an adequate post-deprivation remedy, their motion should be denied.

Second, Defendants argue that Plaintiff fails to state a claim insofar as he alleges that Murguia failed to follow prison regulations in his disciplinary hearing (Administrative Regulation (AR) 707), which they assert does not state a claim. (ECF No. 33 at 6.) As Plaintiff points out, and as District Judge Jones has already determined, Plaintiff is not simply alleging a violation of prison regulations; instead, he asserts a violation of the Fourteenth Amendment of the Constitution.

While the violation of the regulation itself may not directly state a constitutional claim, a prisoner whose allegations implicate a liberty or property interest, and that he was denied the procedural protections due, does state a claim for violation of the Due Process Clause under the Fourteenth Amendment of the Constitution. Therefore, Defendants' motion should be denied on this basis as well.

Finally, Defendants ignore that District Judge Jones did not foreclose Plaintiff from proceeding on these claims insofar as he alleges deprivation of a *liberty* interest with respect to the conditions he faced in segregation at ESP.

In sum, Defendants' motion to dismiss Counts I and II should be denied.

**B. Count III**

  **1. Calcium Antacids**

Defendants argue that calcium antacids are available through the canteen for purchase by inmates; therefore, Plaintiff cannot maintain his Eighth Amendment claim against Dr. Koehn.

(ECF No. 33 at 7; Pacheco[3] Decl., ECF No. 33-2.) They also argue that Plaintiff merely alleges medical malpractice, which does not rise to the level of deliberate indifference, and that a mere difference of opinion does not constitute deliberate indifference. (*Id*. at 6-7.)

Again, Defendants bring a motion to dismiss that is based on materials outside of the amended complaint. The Attorney General's Office should be aware that the proper vehicle for raising such an argument is a motion for summary judgment. To the extent Defendants' argument relies on the Pacheco declaration concerning the availability of calcium antacids in the canteen, the court must treat the motion as one for summary judgment. The other two arguments (medical malpractice and difference of opinion) will be addressed under the motion to dismiss standard, as they do not rely on materials outside of the amended complaint.

Defendants have narrowly construed Plaintiff's claim concerning the calcium antacids in Count III. Not only did Plaintiff allege that Dr. Koehn abruptly cancel his calcium antacid prescription, but also that he requested that Dr. Koehn restore his prior prescriptions because the calcium antacids were not working to resolve his symptoms, but Dr. Koehn failed to do so until approximately three months later. Plaintiff disputes that the antacids were in fact available.[4] In addition, regardless of whether calcium antacids were available in the canteen, Plaintiff still states a deliberate indifference claim against Dr. Koehn because he alleges that the calcium antacids were not adequately addressing his GERD symptoms and Dr. Koehn denied him access to medications that would alleviate his symptoms. Insofar as Defendants argue that availability of calcium antacids in the canteen precludes Plaintiff's deliberate indifference claim, the motion should be denied.

To the extent Defendants argue that Plaintiff merely states a medical malpractice claim, in allowing the claim to proceed, District Judge Jones already determined that Plaintiff's

---

[3] Stephanie Pacheco is employed as the Nevada Inmate Store System Manager for NDOC. (ECF No. 33-2.)

[4] Plaintiff has also filed a motion for sanctions where he disputes Ms. Pacheco's statement that antacids such as Tums were available, and attaches a commissary receipt with a notation that they were not available for purchase. (*See* ECF No. 49 at 5, 9.)

allegations went beyond negligence and malpractice into the realm of deliberate indifference. Plaintiff alleges that he suffered from serious symptoms of GERD that caused him pain, and that despite alerting Dr. Koehn that the calcium antacids were not sufficiently addressing the problem, Dr. Koehn cancelled the calcium antacids and refused to prescribe a substitute medication for months. This does not allege mere medical malpractice or negligence, but deliberate indifference.

Nor does Plaintiff merely allege a difference of opinion with Dr. Koehn. To be actionable, a plaintiff alleging a difference of opinion must also allege that the defendant's conduct was medically unacceptable under the circumstances and was taken in conscious disregard of an excessive risk to the plaintiff's health. *See Snow v. McDaniel,* 681 F.3d 978, 988 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014). Insofar as the calcium antacids are concerned, Plaintiff alleges that Dr. Koehn discontinued his prescription and failed to grant his request for other medication to address his GERD symptoms, which he claims continued for months until Dr. Koehn eventually renewed his former medications. This is sufficient to state a deliberate indifference claim under the Eighth Amendment.

In sum, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim in Count III concerning the calcium antacids should be denied.

**2. Nutrition**

Insofar as Plaintiff alleges that Dr. Koehn did nothing in response to his complaints of rapid weight loss, Dr. Koehn argues that he saw Plaintiff on May 22, 2013, and noted his complaint, and had a body mass index (BMI) of 20.9 and Dr. Koehn ordered labs pertaining to the complaint of weight loss. (ECF No. 33 at 8; Ex. C, ECF No. 35-1; Ex. D, ECF No. 35-2.) On June 21, 2013, Dr. Koehn saw Plaintiff again and stated in the progress notes: "weight reviewed, no significant changes over past month." (ECF No. 33 at 8; Ex. D, ECF No. 35-2.) Dr. Koehn saw Plaintiff again on July 3, 2013, with the progress notes indicating: "Weight Loss: Not Present." (*Id.;* Ex. E, ECF No. 33-3.) Dr. Koehn contends that this—seeing Plaintiff three times between May and July, and ordering labs—is not deliberate indifference. (*Id.*)

Again, Defendants improperly rely on evidence outside of the pleadings to support a motion to dismiss; therefore, the court must treat the motion as one for summary judgment insofar as this claim is concerned.

A genuine dispute of material fact precludes summary judgment as to this claim. While Dr. Koehn claims that he evaluated and adequately monitored Plaintiff's weight during this time period, Plaintiff claims he did not. Plaintiff asserts that the progress notes show that his weight on February 26, 2013 document his weight as 204 lbs., and then on May 22, 2013, his weight was 171.8 pounds. (ECF No. 50 at 3.) He asked for extra food portions when he saw Dr. Koehn on May 22, 2013, and Dr. Koehn refused his request. (ECF No. 50 at 3.) Between May 29, 2013 and October 16, 2013, he contends that he was forced to purchase additional foods from other inmates (against prison policy) to stem further weight loss, and advised Dr. Koehn of this fact, only to have his request for additional food refused again. (ECF No. 50 at 14.) Plaintiff claims that only when he was able to gain canteen privileges again was he able to properly stabilize his weight. Defendants do not address the facts put forth by Plaintiff. While Plaintiff did not submit a declaration to this effect, these facts are contained within his verified amended complaint and are set forth with the requisite specificity. *See Moran v. Selig*, 447 F.3d 748, 760 n. 16 (9th Cir. 2006) (citation omitted) ("A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence.")).

In light of the dispute concerning these material facts, Defendants' motion should be denied with respect to this claim.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Defendants' Partial Motion to Dismiss. (ECF No. 33.)

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be

accompanied by points and authorities for consideration by the district judge.

    2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

    DATED: March 6, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE